IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CONFEDERATED SALISH AND KOOTENAI TRIBES, | Cause No. |
| Plaintiff, | |
| vs. | VERIFIED COMPLAINT TO QUIET TITLE AND INJUNCTIVE RELIEF |
| LAKE COUNTY BOARD OF COMMISSIONERS and LORI LUNDEEN, | |
| Defendants. | |

Plaintiff Confederated Salish and Kootenai Tribes ("CSKT") bring this complaint for declaratory judgment to quiet title, pursuant to 28 U.S.C. §§ 2201-02 and 28 U.S.C. § 2409a, and to enjoin Defendants from asserting of regulatory authority over the use of Indian trust land and future trespass.

## PARTIES AND LAND

1. Plaintiffs are a federally-recognized confederation of Indian tribes with a government operating in accordance with the Indian Reorganization Act of 1934, 25 U.S.C. § 461, et seq. The CSKT reserved from their aboriginal territory the Flathead Indian Reservation ("FIR") as their exclusive and permanent homeland pursuant to the Hellgate Treaty of July 16, 1855, 12 Stat. 975 (1855).

1

2.     Defendant Lake County Board of Commissioners is the elected governing body for Lake County, a political subdivision of the State of Montana. The Board oversees provision of services to the citizens of Lake County. The Board reviews and approves subdivision proposals, constructs and maintains certain roads, or authorizes construction of certain roads.

3.     Defendant Lori Lundeen is the owner of 40 acres of rural land located west and immediately adjacent to trust title land owned by the CSKT. Lundeen proposed a 60-lot RV subdivision ("Wild Horse RV Resort Subdivision") with access through platted and undeveloped roads within the proposed town site of Big Arm, Montana ("proposed town site"). To the best information and belief of the CSKT, the undeveloped access roads at issue traverse CSKT-owned trust title land. The Lake County Board of County Commissioners granted conditional approval of the subdivision.

4.     The proposed Big Arm town site is described on the 1913 plat as Government Lot 1 and 2 in the S2NE and SE of Section 33, Township 24 North, Range 21 West.

## JURISDICTION AND VENUE

5.     Federal question jurisdiction exists under 28 U.S.C. § 1331. Jurisdiction also arises under 28 U.S.C. § 1362, as a civil action brought by an Indian tribe and the matter in controversy arises under the Constitution, laws, and treaties of the

2

United States.  Under the Declaratory Judgement Act, an actual controversy exists concerning the property rights of the parties within the jurisdiction of the Court.  28 U.S.C. §§ 2201-02.  The Quiet Title Act ("QTA"), 28 U.S.C. § 2809a, permits suits by Indian tribes seeking possession of land held in trust for the tribe by the United States.

6. Venue is proper in Missoula Federal District Court pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1362.  Venue is also proper under Civil Rule 3.2 of the Local Rules of Procedure of the United States District Court for the District of Montana.

## FACTS

### A. Flathead Indian Reservation

7. Prior to July 16, 1855, the CSKT held aboriginal title to much of present day Montana, including what is now the FIR.  *Confederated Salish and Kootenai Tribes v. U.S.*, 193 Ct. Cl. 801, 437 F.2d 458 (1971).

8. The 1855 Treaty of Hellgate (July 16, 1855), 12 Stat. 975, caused no break in the chain of Tribal title to Reservation lands.  The FIR was reserved by and for the CSKT; title went directly from CSKT aboriginal title to trust title held by the United States for the exclusive use and benefit of the CSKT.  A treaty "is not a grant of rights to the Indians, but a grant of rights from them – a reservation of those not granted." *U.S. v. Adair*, 723 F.2d 1394, 1412-13 (9th Cir. 1983) (quoting

3

*U.S. v. Winans*, 198 U.S. 371, 381 (1905)).  Treaties do not implicitly diminish aboriginal title, *U.S. v. Klamath Indians*, 340 U.S. 119, 122-23 (1938), only Congress can extinguish such title.  *U.S. v. Tillamooks*, 329 U.S. 40, 46 (1946).

9. Commonly called the Flathead Allotment Act ("FAA"), the Act of Apr. 23, 1904, Pub. L. No. 58-159, 33 Stat. 302 (1904), was enacted in spite of decades of express CSKT opposition to allotting the FIR.

10. The FAA, as amended, is the preemptive federal law on land title on the FIR.

11. The 1904 FAA forced the allotment of the FIR to individual Indians.  The act was implemented by a Presidential Proclamation dated May 22, 1909, (3 Kapp. 655), and unallotted CSKT lands were opened to non-Indian entry under unspecified "general provisions of the homestead, mineral, and town-site laws of the United States."  33 Stat. at 303-04.

12. Section 16 of the FAA makes clear that when opening CSKT lands for non-Indian entry the United States, through the Secretary of Interior ("SOI"), shall "act as trustee for said Indians."  33 Stat. at 305-06.

13. Section 17 of the FAA, Pub. L. No. 59-258 § 17, 34 Stat. 325, 354 (1906), authorized the platting of specific town sites.  Section 17 also gave the SOI discretionary authority to plat other town sites within the FIR.  All town sites were

to be plated, appraised and disposed of in accordance with Section 2381 of the United States Revised Statutes.

14. Section 2381, a Public Lands Act from 1863, is not specific to Montana Indian Reservations or Indian Country generally. It permits town sites reserved from public lands to be plated into lots, appraised and offered for sale to the public. Rev. Stat. § 2381 (Mar. 3, 1863).

15. The sole congressionally directed divestiture of CSKT ownership for town site lands contained in the FAA, as amended, applies to sale of residential *lots*, and excludes sale of roads, alleys and parks. 34 Stat. at 351.

16. When the proposed town site of Big Arm was plated, the lands in question here were held in trust by the United States for the CSKT. Congress authorized the SOI, acting in his trustee capacity to the CSKT, to convey title to the lots within the proposed town site. Congress did not authorize the Secretary to transfer ownership or regulatory authority of proposed town site roads, alleys, or public parks to any entity. *Id.*

17. When the language of a statute is clear, courts will apply it as written. The Montana courts adhere to this canon of statutory construction as well. *Western Energy Co. v. Mont. Dept. of Revenue*, 297 Mont. 55, 990 P.2d 767 (1999). Furthermore, when a statute specifies one act or subject and excludes others, the doctrine of "expressio unius est exclusio alterius" applies.

18. A plain reading of the statutes make clear that only lots would be sold at public auction under Section 2381 or Section 17 of the FAA. The roads, alleys and public parks within the proposed town site have remained in trust for the CSKT.

19. The Act of Mar. 4, 1915, Pub. L. No. 63-310, 38 Stat. 1188, 1189 (1915), is specific to laying out public roads on Montana Indian Reservations.

20. Unlike the general application of Section 2381 of the 1863 Public Lands Act, the Act of 1915 is more recent, and is specific to Montana Indian Reservations. Indian reservation lands are not "public land". *Ash Sheep Co. v. U.S.*, 252 U.S. 159 (1920). This is confirmed by the definition of Indian Country contained in 18 U.S.C. § 1151, defined in relevant part as "all lands within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and including rights-of-way running through the reservation."

21. The meaning of an Act may be affected by another when Congress subsequently and specifically addresses the topic at hand. *Food and Drug Administration v. Brown and Williamson Co.*, 529 U.S. 120 (2000) (citing *U.S. v. Estate of Romani*, 523 U.S. 517, 530-31 (1988)). Accordingly, the 1915 Act controls the matter at issue. Section 2 of the 1915 Act requires Montana counties to undertake a six-step process to acquire the right to dedicate public access routes on Montana Indian Reservations, pursuant to Montana law. 38 Stat. at 1189.

22. The steps are cumulative; all must be accomplished. First, Section 2 requires that the county demonstrate that it has "jurisdiction over any territory" to be impacted by county creation of a public road within the Reservation. Second, the county must comply with steps "in accordance with the laws of the State of Montana relating to the laying out and opening of public roads." Third, the county must notify the landowner, here the U.S. in trust for the Tribes "as provided in the State laws." Fourth, the county must "serve notice upon the superintendent in charge of the restricted Indian lands upon which it is proposed to lay out a public road." Fifth, the county must provide the superintendent "with a map drawn on tracing linen showing the definite location and width of such proposed road." Finally, "no such road shall be laid out until after it has received the approval of such superintendent." *Id*.

23. Land held in trust for Indian tribes is protected from unauthorized alienation and one cannot acquire property rights in trust property by prescription. *U.S. v. Ahtanum Irrigation Dist.,* 236 F.2d 321, 334 (9th Cir.1956) (citing Indian Intercourse Act, 25 U.S.C. § 177, prohibiting alienation of Indian lands other than by treaty or convention).

24. An easement over the Indian trust lands cannot be acquired by reason of necessity. *U.S. v. Clarke,* 529 F.2d 984, 986 (9th Cir.1976).

**B. Proposed Town Site of Big Arm, Montana**

25.     Pursuant to the opening of the FIR, and in anticipation of non-Indian settlement, the General Land Office ordered a plat for the proposed town site of Big Arm on June 20, 1910.  *See*, **Exhibit A**: 1913 Big Arm Plat.

26.     Said plat encompassed 206.66 acres, more particularly described as Government Lots 1 and 2 in the S2NE and the SE of Section 33, T24N, R21W. The plat was completed on August 20, 1913.

27.     Subsequently, the Department of Interior approved the plat on Sept. 4, 1913. The plat lacks any dedication of roads, alleys or parks for public use.

28.     The 1913 plat states that it was prepared in accordance with the Act of June 21, 1906 (34 Stat. 354), which refers to Section 17 of the FAA, and the Act of Aug. 24, 1912 (37 Stat. 527), granting an easement to lands bordering or adjacent to Flathead Lake for purposes of irrigation or development of water power.  The easement does not pertain to roads within the proposed town site.

29.     Between 1930 and 1931, the Commissioner of Indian Affairs and FIR Superintendent discussed the lack of demand for land within the proposed town site, the fact that it was not a mandatory town site under Section 17 of the FAA, vacating 80 acres of the proposed town site, and reappraisal of the lots available for sale.  Consequently, the S2SE of Section 33, T24N R21W was to be released for Indian allotment, thus removing the 80 acres from the proposed town site.  *See*, **Exhibit B**: Indian Office File No. 304, Letters between Commissioner of Indian

8

Affairs C.J. Rhoads to Flathead Agency Superintendent Charles E. Coe, dated Nov. 12, 1930 through Aug. 24, 1931.

30. Through the authority granted in the Indian Reorganization Act of 1934, the SOI began restoring surplus lands to Indian Tribes. 25 U.S.C. § 5103. Noting a lack of public demand for lots in the proposed town site, the Secretary of Interior restored to tribal ownership all undisposed lots within the proposed town site, subject to any valid existing rights. *See*, **Exhibit C**: 21 Fed. Reg. 6625, 6681-82 (Sept. 5, 1956).

31. The BIA Title Status Report for T6001 (Certified Aug. 30, 2018) identifies two valid existing rights-of-way specifically for highway construction. The highway rights-of-way apply to Montana Highway 93 and are not at issue here. *See*, **Exhibit D**: BIA Title Status Report.

32. The BIA Title Status Report reflects no rights-of-way granted pursuant to the Act of 1915, which set out the process for a Montana county to establish a public road on a Montana Indian Reservation. *See,* paragraphs 21-22, above.

### C.  Approval of the Wild Horse RV Resort Subdivision

33. Despite concerns over legal access through the proposed town site raised by Janet Camel, CSKT's representative to the Lake County Planning Board, the Planning Board recommended approval of the RV resort on Apr. 11, 2018. Developer Lori Lundeen and Lake County Commissioner Gale Decker were

present and participated in the discussion.  *See*, **Exhibit E**: Lake County Planning Board Meeting Minutes pp. 1-8.

34.   Lake County Board of Commissioners subsequently issued a conditional approval of the Wild Horse RV Resort Subdivision on May 16, 2018, with a condition that legal access be investigated by the county's Planning Department and Lundeen to confirm the county considers the access legal, prior the recording of the final subdivision plat.  *See*, **Exhibit F**: Lake County Board of Commissioners Conditional Approval Letter to Lori Lundeen, Condition #6 (May 16, 2018).

35.   Lake County Subdivision Regulations require a final plat to be recorded no later than 60-days prior to the expiration of the preliminary plat.  *See*, Lake County Planning, *Subdivision Regulations, Ch. II.O.1*, effective July 1, 2010, https://www.lakemt.gov/planning/SubdivisionMain.html (accessed May 2, 2019). Conditional approval for this subdivision expires May 16, 2021, unless an extension is granted.

36.   The primary access to the subdivision, as conditionally approved, would be gained by a road identified as Seventh Street on the proposed town site plat, with two secondary access roads identified as F and H Streets.

37.   With the exception of a portion of road in front of Block 17, the entire route proposed and approved by Defendants is surrounded by Tribal land held in trust for

the CSKT by the United States and undeveloped.  *See*, **Exhibit G**: Lake County Section Map, GIS Department (dated Nov. 12, 2009) and **Exhibit H**: CSKT Aerial Photo (dated May 13, 2019).

38.     CSKT compiled research then submitted to Lake County Board of Commissioners a written response to the conditional approval on Aug. 2, 2018.  CSKT requested land title records or other documents that may resolve the issue in an amicable manner.  CSKT received no response to this request.  *See*, **Exhibit I**: CSKT Letter to Lake County Board of Commissioners.

39.     CSKT reiterated their concerns as to legal access by sending comments to the Lake County Planning Department on Jan. 10, 2019, pursuant to a notice the developer sought to amend the conditional approval.  CSKT requested a title policy or land title records indicating County authority or ownership.  *See*, **Exhibit J**: CSKT Letter to Jacob Feistner, **Exhibit K**: Legal Notice (with attachments).

40.     The amendment eliminated one secondary access road identified as H Street.  *See*, **Exhibit L**: Amended Road Configuration map approved by Lake County Commissioners (dated Jan. 31, 2019) and subdivision survey.

41.      On Feb. 13, 2019, CSKT promptly responded to the Lake County Attorney's request for information dated Feb. 8, 2019.  At that time, CSKT again requested records that justify the County's assertion of ownership or regulatory authority over undeveloped land within the proposed town site.  In addition, CSKT

requested an un-redacted copy of a 1912 document (provided to Janet Camel at the Jan. 31, 2019 hearing) along with the County Clerk's postings mentioned in the 1912 document. To date, CSKT is unable to determine if such a response was received from the County. *See*, **Exhibit M**: CSKT Letter to Lake County Attorney Walter Congdon.

42. On Apr. 16, 2019, CSKT Lands Department was notified that surveying was underway for the conditionally approved roads. *See*, **Exhibit N**: CSKT Lands Department Report and photos by Daniel Cowan (Apr. 25, 2019).

43. Additionally, Defendants have established the road identified as E Street to move heavy equipment in and out of Lundeen's property, which is not part of the conditional approval. *See*, **Exhibit F**: Condition #14.

44. On May 7, 2019, CSKT Tribal Council approved the installation of a gate to prevent unauthorized encroachment over tribal trust land. The gate was installed May 13, 2019.

45. U.S. Department of Interior Bureau of Indian Affairs Acting Superintendent for the FIR issued a Notice of Trespass to Defendant's contractor, Sandry Construction, on May 14, 2019. *See*, **Exhibit O**: DOI/BIA Notice of Trespass.

46. On May 15, 2019, CSKT received notice of a Lake County Planning Department hearing scheduled for May 28, 2019. The hearing is for a second modification to the Wild Horse RV Resort's access route. The modification

proposes secondary access over the road identified as E Street and eliminates access on the road identified as F Street.  *See*, **Exhibit P**:  Legal Notice.

47.    The Department of Interior Office of Regional Solicitor, Pacific Northwest Region informed CSKT on May 17, 2019, of a letter received by their office from Lake County Attorney Walter Congdon and addressed to CSKT Tribal Chairman Ronald Trahan.  The Regional Solicitor's office forwarded the letter and some attachments to CSKT by email.

## COUNT 1

### Action to Quiet Title

48.    The CSKT reallege and incorporate all paragraphs 1-47 above.

49.    An actual and substantial controversy exists concerning the title of the land in question.  Declaratory judgement is appropriate under 28 U.S.C. §§ 2201-02.

50.    Pursuant to the Quiet Title Act, 28 U.S.C. § 2409a, CSKT is seeking a judgment affirming CSKT's title to the lands subject to this action.

51.    CSKT's trust title to the subject lands derives from the Treaty of Hellgate. The Treaty caused no break in the chain of title to FIR lands; title went from aboriginal title to trust title held by the United States for its beneficiary CSKT.

52.    The proposed town site lands remained in trust title until lots were sold. Congress permitted the SOI to act as trustee for the Indians in the sale of residential lots within the proposed town site.

53.   The Act of Mar. 4, 1915, specifically applies to this situation and describes the process for a county to acquire the right to dedicate public access routes on a Montana Indian Reservation.  According to the Bureau of Indian Affairs Title Status Report, no rights-of-way were recorded under the authority of this Act within the proposed town site.

54.   By 1931, the Commissioner of Indian Affairs acknowledged a lack of demand for land within the former town site.  Consequently, 80 acres (S2SE of Section 33, T24N, R21W) were eliminated from the plated town site for purposes of allotment to a Flathead Indian.

55.   In 1956, the Secretary of Interior again recognized the lack of demand for the lots within the proposed town site and restored the remaining unsold lots to the FIR.

56.   In the intervening 43 years, the Defendants took no steps necessary to assume authority or ownership over the proposed town site roads, alleys or public parks.

57.   This action arises out of the Lake County Board of Commissioners conditional approval of the primary and secondary access routes through the proposed town site and Lori Lundeen's commencement of road construction, despite known issues regarding legal access over land held in trust title for the CSKT.

58. CSKT has provided evidence of their possessory interest, while the Defendants have failed to offer any evidence supporting their claim to regulatory authority or an ownership interest of the subject land.

59. CSKT asserts that the roads, alleys and public parks designated by the 1913 plat for the proposed town site were not alienated from the FIR at any time and continue to be held in trust for the benefit of the CSKT.  Pursuant to 28 U.S.C. § 2409a, CSKT seek a determination quieting title to the roads, alleys and public parks within the proposed town site.

## COUNT 2

### Injunctive Relief

60. The CSKT reallege and incorporate paragraphs 1-59 above.

61. CSKT requests a preliminary injunction to halt Lundeen's development and use of the roads at issue and to prevent the Lake County Board of Commissioners from any further acts authorizing any construction on the roads within the proposed town site, pending a hearing by this Court.

62. Additionally, CSKT seek a permanent injunction enjoining the Defendants from trespassing or regulating the use of Indian trust land.

63. Injunctive relief is appropriate due to immediate and irreparable harm caused by the Defendants authorization and commencement of road construction without resolving known issues of legal title.  The balance of equities tip in

15

CSKT's favor as the Defendants will not be harmed by a preliminary or permanent injunction because they have no legal right to regulate or use Indian trust land. The public interest weighs in favor of injunctive relief because it would affirm the expectation of all citizens and the CSKT that where issues of title are raised, local government will diligently work to resolve the cloud on title prior to authorizing damaging acts or improper authority over another's land.  Further, injunctive relief would prevent local government and developers from acting in a manner inconsistent with applicable federal law and infringing on property rights of the CSKT or other citizens.

## **PRAYER FOR RELIEF**

WHEREFORE, the CSKT request that the Court enter the following order:

A. Judgment quieting Plaintiff's beneficial interest to the real property (held in trust by the United States for the benefit of the CSKT), and determining that Defendants have no right, title, or interest in or to the real property;

B. That this Court enter a Preliminary Injunction to Plaintiff enjoining Defendants from:

1) developing or constructing new roads within the proposed town site,

2) using presumed rights-of-way for utility installation, and

3) exercising regulatory authority over the roads, alleys or public parks within the proposed town site;

C. That this Court enter a Permanent Injunction enjoining Defendants from trespassing or regulating the use of Indian trust land within the proposed town site; and

D. For such other and further relief as the Court deems just and proper.

Respectfully submitted this 23rd day of May 2019.

        /s/ Christina M. Courville
Christina M. Courville
Daniel J. Decker
John T. Harrison
Shane Morigeau
CSKT Legal Department
P.O. Box 278
Pablo MT 59855
Ph: (406) 675-2700 ext. 1160
Fax: (406) 675-4665
Christina.Courville@cskt.org
Daniel.Decker@cskt.org
John.Harrison@cskt.org
Shane.Morigeau@cskt.org
*Attorneys for Plaintiff*

## VERIFICATION

<u>Carolee Wenderoth</u>, being first duly sworn, deposes and says:

That she is CSKT Lands Department Head for the plaintiff in the foregoing action and she has read the foregoing, knows the contents thereof and that the facts and matters therein contained are true, accurate and complete to the best of her knowledge and belief.

_____
Carolee Wenderoth
CSKT Lands Department Head

C.L.
5/21/19

State of ~~Montana~~ Arizona
County of ~~Lake~~ Maricopa

This instrument was signed or acknowledged before me on 5/21/2019, by Cynthia Mary Leon.

_____
Notary Public for State of ~~Montana~~ Arizona

Cynthia Mary Leon
Notary Public
Maricopa County, Arizona
My Comm. Expires 03-12-22